**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| GOOD WORKS MINISTRIES, INC. <br> a Pennsylvania not for profit corporation. <br><br> Plaintiff         , <br><br><br><br><br> v. <br><br> COUNTY COMMISSIONERS OF <br> FAYETTE COUNTY, PENNSYLVANIA , a <br> political subdivision <br><br> FAYETTE COUNTY, PENNSYLVANIA <br> ZONING HEARING BOARD, <br><br> Defendant | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**COMPLAINT AND DEMAND FOR JURY TRIAL**
**(DAMAGES AND INJUNCTIVE RELIEF REQUESTED)**

**PRELIMINARY STATEMENT**

This matter arises pursuant to the Fair Housing Act of 1968, as amended by the Fair Housing

Amendments Act of 1988, 42 U.S.C. § 3601 et seq. ("FHA"); and the Americans with Disabilities

Act, 42 U.S.C. § 12101 et seq. ("ADA") and  42 U.S.C. § 2000cc-2(f), the Religious Land Use and

Institutionalized Persons Act ("RLUIPA").  Good Works Ministries, Inc. ("Good Works"), a faith

based organization seeks damages as redress for: (1) the intentional discrimination and disparate

impact due to the acts and decision of the Fayette County Zoning Hearing Board ("ZHB") in denying

its application for a special exception to operate a non- hospital, short term substance abuse facility; (2) the affirmative disability-based discrimination manifested in Defendant's acts and decisions; and (3) Defendant's discriminatory refusal and denial to provide Plaintiffs a reasonable accommodation in keeping with Federal anti-discrimination laws; and (4) its unlawful conduct in violation of RLUIPA.

The Plaintiff hereby ask this Honorable Court for declaratory relief, and an award of monetary damages, costs, and reasonable attorneys' fees.

## I.   JURISDICTION AND VENUE

1.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C.§§ Sections 1331, 1343,  42 U.S.C. § 3613, 42 U.S.C. §12133 and 42 U.S.C. § 2000cc-2(f).

2.      Venue is proper in the United States District Court for the Western  District of Pennsylvania as all acts complained of occurred within this District.

## II.   PARTIES

3.      Good Works Ministries is a faith based, Pennsylvania not for profit corporation with its principal place of business located in Uniontown, Pennsylvania. The mission of Good Works provides substance abuse treatment to chemically dependent men and women utilizing faith-based principles.   Good Works sought to open a treatment facility located at 14 Memorial Drive in Perry Township, Pennsylvania.

4.      The Fayette County Board of County Commissioners ("BOCC") is a political subdivision of the Commonwealth of Pennsylvania.  The BOCC is responsible for the acts of its agents and employees, including the Zoning Hearing Board.  The BOCC is also responsible for the enactment, enforcement, and application of its zoning code. The BOCC is a public entity under the

Americans with Disabilities Act, 42 U.S.C. §12131.  For purposes of RLUIPA, the BOCC constitutes a "government." 42 U.S.C. §§ 2000cc-5( 4)(A)(i), (ii).

5.    The Zoning Hearing Board ("ZHB") is responsible for the interpretation of the Borough's zoning code.  It hears and decides all applications for zoning use permits that seek exceptions and waivers of the Borough's zoning code. The ZHB is a public entity under the Americans with Disabilities Act, 42 U.S.C. §12131. For purposes of RLUIPA, the BOCC constitutes a "government." 42 U.S.C. §§ 2000cc-5( 4)(A)(i), (ii).

## III.    STATEMENT OF FACTS

### A.    GOOD WORKS MINISTRIES.

6.    Good Works attempted to obtain zoning approval from the ZHB to open the Good Works Rehabilitation Center.  The Rehabilitation Center was intended have been a level 3B, non-hospital, short term, rehabilitation facility for men and women.

7.    Good Works was founded in 1991 for the purpose of providing substance abuse treatment and counsel to persons who have substance abuse problems.

8.    Good Works has been operating the Good Works Life Recovery House since 2013 in Uniontown, Pennsylvania.  The Uniontown facility is a halfway house.  The facility which is the subject of this action is the result of the denial Goodworks' application for a special exception and variance for a residential substance abuse treatment facility in Perryopolis, Pennsylvania.

9.    As a faith-based substance abuse facility Good Works provides treatment for chemically dependent men and women who are seeking recovery. Good Works Rehabilitation Center recognizes each person as one of uniqueness, dignity, and self-worth as well as one with the capacity for personal self-growth, responsibility, faith, and self-determination.   The goal is to provide a

homelike atmosphere where women and men can get support and structure in a 12 Step based program. A 12 Step Program is based on the 12 Steps of Alcoholics or Narcotics Anonymous. In addition to the 12 Step philosophy, a variety of therapeutic treatment modalities would have been utilized at the facility. Good Works Rehabilitation Center was to be part of the umbrella organization of Good Works Ministries and Life Recovery House. The plan was to have up to 20 residents.

10.     At the time of making application for a special exception, there were no substance abuse rehabilitation facilities located in Fayette County, Pennsylvania, now there are two such facilities.

11.     The prospective facility is an inpatient substance abuse facility. It would have staff present on a 24-hour basis. A medical director is also on staff and available on a 24-hour basis.

12.     As a substance abuse treatment facility, Good Works is required to meet the licensing requirements of the Pennsylvania Department of Drug and Alcohol Programs. (DDAP")

13.     All substance abuse counselors must meet the DDAP certification requirements.

14.     The average length of stay is between 14 and 21 days.

15.     The targeted population is anyone who has been abusing a substance for an extended period of time, i.e. opioids, cocaine, alcohol.

16.     Good Works does not provide detox services, as that must be done in a hospital or similar medical setting.

17.     Placement criteria and level of care is set by DDAP criteria.

18.     All residents must adhere to a schedule as prepared by the Good Works staff. This includes but is not limited to meals,shower times, group counseling session, chores, and in house meetings of Alcoholics Anonymous and Narcotics Anonymous.

19.     Residents are allowed family visits during designated hours on the weekends.

20.     Due to the opioid crisis, Fayette County in 2018 established an"Overdose Task Force."  The mission of the Task Force is to eliminate overdoses in Fayette County through collaboration and education.  The Task Force published a study from the Drug Enforcement Administration that documented between 2016-2018, Fayette County ranked 23 out of 67 Pennsylvania Counties in opioid related deaths.

21.     The Task Force stated its goals were: Reduce stigma in Fayette County; empower professionals to promote the health, safety, and well-being of person at high-risk for overdose and/or with Substance Use Disorder/Opioid Use Disorder or an active addiction; ensure that individuals in Fayette County have access to quality Substance Use Disorder treatment at the appropriate level of care, including MAT (medically assisted treatment); and increase access of naloxone for all residents in Fayette County.   In addition, the Task Force sought to ensure that residents of Fayette County are well-informed of the signs of Substance Use Disorder/Opioid Use Disorder, overdose, treatment options, and recovery programs available throughout the community.

22.     Fayette County in 2018 did not have any in patient substance abuse facilities.

23.     In an attempt to address the substance abuse treatment services in Fayette County, Good Works was offered a contract.  In a letter dated July 11,2018, Good Works was offered a contract by Value Behavior Health of Pennsylvania to establish a 3B, non-hospital, short term rehabilitation facility in Fayette County, Pennsylvania.  The terms of the contract required Good Works to be operational by December 31, 2018, otherwise the terms of the contract would not be honored.

24.     In an attempt to comply with the terms of the contract, after acquiring the building located at 14 Memorial Drive Good Works began work addressing making obvious repair to the physical structure of the building.  This work did not require a building or work permit.  The work consisted of repairing bust pipes, damaged shingles on the roof, and rotted out drywal.

### B.     FAYETTE COUNTY ZONING CODE

25.     The applicable zoning code definitions which pertain to the issues of this complaint are as follows:

26.     **GROUP HOME** -- A place, home, or institution which is licensed to provide board, shelter, and personal services to not more than eight (8) persons, regardless of age, who have a need for supervision or assisted community living based on emotional, mental, physical, familial, or social differences. (Examples of such persons include but shall not be limited to the mentally challenged, physically handicapped, alcoholics; elderly, drug-dependent, and juveniles).

27.     **GROUP RESIDENCE** -- A residence, where room and board are provided to a maximum of thirteen (13) permanent residents of any age who are mentally challenged or physically handicapped and who are in need of supervision and specialized services, including necessary staff who may or may not reside in the dwelling and who provide health, social and/or rehabilitative services to the residents; such services being provided by a governmental agency, its licensed or certified agents or any other responsible nonprofit organization meeting the minimum requirements of the sponsoring agency.

28.     **HALFWAY HOUSE** -- A residence for those who have completed treatment at a

rehabilitation facility but are not yet ready to return to independent living in the community and where residents participate in structured programs designated to ease successful reintegration into society.

29.    **NURSING/CONVALESCENT CARE FACILITY** -- An establishment, licensed by the Commonwealth of Pennsylvania, engaged in providing 24 hour inpatient nursing and health related personal care, utilizing in whole or part licensed and/or registered nurses, excluding hospital services and excluding day-to-day personal care which is not health care by licensed or registered nurses.

30.    14 Memorial Drive, a former nursing home, is located in the R-1 zoning district.  The R-1 district is a moderate density residential district.

31.    A Nursing/Convalescent Care facility is allowed in the R-1 zoning district by special exception.   It is also allowed by special exception in the following zoning districts: A-1 (Agricultural); R-A (low density residential district); R-2 (high density residential); and,  AH (airport overlay)

32.    A Nursing/Convalescent Care facility is a permitted use in B-1 (business district)

33.    Group homes and halfway houses are prohibited uses in all zoning districts with the exception of the R-2 and AH, where they are allowed by special exception.

**C.    GOOD WORKS ZONING APPLICATION AND HEARING BEFORE THE ZHB**

34.    Good Works bought/leased the premises located at 14 Memorial Drive for use as a substance abuse treatment facility.

35.     The real estate listing for 1431 Memorial Drive described the property as follows: "Excellent location.  Facility was used as a personal care facility at one time with 56 residents.  Many rooms, and bathrooms.  Kitchen and dining area, beauty shop, etc.  Building approx. 6000 sq. ft. Uses today, apartment complex, church, business offices.  Parking for 40 cars, 20+ rooms plus bathrooms."

36.     The property has been used as a personal care home since 1985.  The property has been licensed, registered and paying taxes as a personal care home since 2008.

37.     After consultation with County staff, Good Works submitted an application for a special exception for a nursing/convalescent facility.  The County zoning code does not contain a classification for substance abuse treatment facility.  The nursing home classification is the closest classification.

38.     As the result of complaints about the repair work, the Perry Township Building Code Official issued a Stop Work order on or about December 7, 2017.  In a letter dated December 11, 2017, to Larry Gipe of Good Works, the Building Official required that all requisite permits be obtained and prohibited before "other demolition, renovation, and/or rehabilitation of the structure until the proper building permit is secured."

39.     Good Works employed an engineering firm to inspect the premises as a result of the "Stop Work" order.  The firm's report and inspection concluded that there is no evidence that the structure is dangerous as defined by the building code.

40.     On December 11, 2018, Good Works submitted an application to the ZHB for a special exception to operate a "Nursing/Convalescent" facility in an R-1 zoning. 14 Memorial Drive is located in Perry Township ("Township").  The Township was represented by counsel.  The

Borough opposed Good Works application because it did not fit the definition of a Nursing/Convalescent Care facility.   Specifically the application requested a special exception and variance from the minimum lot size for a "Nursing/Convalescent Care" facility.   In other words, it was a request for a reasonable accommodation that the requirement pertaining to the lot sized be modified for Good Works.

41.     At a hearing before the ZHB, counsel for Good Works requested a reasonable accommodation to be treated the same as nursing home/convalescent facility.   Counsel for Good Works stated that Good Works would be providing 24-hour health care for its clientele.   He further stated that the facility would be run and manned by medical personnel.   He also stated it will be licensed by the Commonwealth of Pennsylvania.   He requested a waiver of the 24-hour nursing requirement, by substituting substance abuse counselors, certified by DDAP in place of nurses.   Regardless, there is 24-hour staffing.

42.     The County opposed the application and the request on the sole basis that the substance abuse treatment facility failed to meet the definition of a Nursing/Convalescent Care facility.   Counsel for the County stated that the prospective use was more akin to either a group home or halfway house.   He further stated these uses were not permitted in the R-1 zone.

43.     Counsel for the County also stated that the prospective use cannot be that of a nursing home because it is a rehabilitation facility for chemically addicted men and women.   "It's not the right zone and the right place for it under the ordinance."

44.     Unlike a nursing home, the residents of the substance abuse facility are not bedridden, are not hooked up to vital signs monitoring or other medical equipment; and, no one is in need of

assistance with daily living activities or in need of skilled nursing care.  No one will have an acute condition.

45.     DDAP regulations do not require a substance abuse facility to have licensed nurses.

46.     Clients of the prospective Good Works treatment facility are not ready to reside in a halfway house, which requires less supervision and a lower level of care, even if they choose to later reside in a halfway house.  Upon completion of treatment the residents can chose to live anywhere they please.  Inpatient Treatment for Substance Use Disorder offered at a rehabilitation facility such as Good Works is distinguished from housing choices available after completion of treatment

47.     Citizens opposed to approval of the special exception application, complained that the facility was next to a club that served alcohol.  There were also complaints about the facility being in close proximity to a school.  Concern was expressed about the safety of the children attending the school.

48.     One comment from a citizen concerned the nature of the disability of the prospective clients.  After Ms Gipe explained to the ZHB the Good Works concept and the nature of the faith based substance abuse treatment  to be offered at the Memorial Drive location, the citizen commented:  "I don't know what you're putting in there, that's the question, we don't know what it is."  Ms. Gipe responded that "We are operating a faith based halfway house (at Uniontown)"

49.     The citizen then wanted to know not only what the success rate was, but the nationwide success rate.  The ZHB Solicitor, Wendy O'Brien, followed up by asking "You can't speak to the rate of recovery or success?"  Ms. Gipe responded "No."

50.     The citizen then stated: " Nationwide, if you did a little bit of research, you would know, it's 40 to 60 percent failure rate. I mean, that's from the Betty Ford Clinic."  Ms. O'Brien responded by stating "That's information we wouldn't mind hearing at public comment."

51.     Mr. Purcell, the Township Solicitor asked Ms. Gipe if she was seeking a license for a personal care home, to which she replied "No."

52.     The Board asked question as to the layout of the facility.  Ms. Gipe told the ZHB that it was apparent that the building was set up to store medication.  There were security cameras.  "It had everything that we need to open a "rehab."

53.     In response to a question about the number of rooms, Ms. Gipe told the ZHB that there were enough rooms that the residents would have private rooms.  This response was met by skepticism.  ZHB member, Ms. Marella asked: "You're telling me there are separate rooms in that place, plus a support room, kitchen, drug room, whatever?"  Ms. Gipe replied: "There's lots of rooms. Right now our halfway house we have two to a room."

54     The ZHB was not satisfied with Ms. Gipe's description of the interior of the building Good Works had an engineering firm prepare a report on the physical structure of the house.

55.     Jim Martin from the Fayette Engineering Company was asked to provide testimony. He stated that the building was inspected.  Most everything was intact except for some pipes which were probably damaged from the heating not being on. He stated the heating system is operational, and overall the building is in good shape.

56.     A question from the audience centered on one person's concern that the rehab would have both male and female residents.  This concerned her because she has two daughters. She further stated that she represented 300 people from the community who could not be present because the

hearing was scheduled during work hours.  She repeated her concerns about both males and females as receiving services.  Specifically, she stated, "How do you plan on rehabbing and putting them in an environment different than what you are used to next to a bar and where there are children and you say they can freely leave if they decide."  She continued: "Are they monitored on medication? I have a lot of questions. What if they go off, the failure rate, 40 to 60 percent of these people coming into your home are coming to my back yard, please explain."

57.    Ms. Gipe responded that the males and females would be on separate floors, and could be monitored by the security cameras

58    Citizen opponents were not satisfied with Ms. Gipe's response concerning supervision of the residents, which they deemed to be inadequate.   They were not satisfied that the residents could be adequately monitored, especially with a bar in the next building over.

59.    Citizen opponents wanted to know if a resident would be re-admitted to the facility if they left.  It was not clear what was meant by this, but the question was answered by Good Works counsel who stated that there was a procedure for residents who wanted to check themselves out. He further elaborated that if a resident leaves the facility by violating the procedure, there would be no readmittance.   Good Works would arrange to take the resident to the train station for transportation back home or to a close family member.

60.    A citizen opponent who lives across the street from Good Works complained that he was never notified of the purchase by Good Works.  He accused Good Works of performing work on the roof and other parts of the building without a building permit.

61.     Ms. Gipe responded that the building was repaired legally.   Drywall with mold on it was removed.  An engineering firm was engaged, and shingles were replaced on the roof.  No substance abuse rehabilitation was taking place.

62.     It was pointed out by a supporter of Good Works that there was a methadone clinic in the vicinity, which supported the need for a residential substance abuse facility like Good Works.

63.     Another opponent stated that he does not want Good Works in the area because it's not the right place for it.  He stated: "We are opposed to them getting help in an area that isn't going to help them. In an area that may not help the community."  He further stated: "I walked around door to door, I have a petition here with well over a hundred signatures. I personally spoke to 40 of those people at least, all directly in proximity to your future location. Nobody that I spoke to said this is great, everybody was just baffled, I never heard about this. What do you mean? These are the people that live right there,"

64.     Another opponent who live across the street stated: "It's not in your backyard, it's in my front yard  I have a seven month only grandson that lives there. I got robbed by a drug addict. I ain't putting up with it again. I don't want it. They don't need it. They need help, they need to put them out in the county.  He further stated: "I got robbed. I'm not going to do it again.I'll be one of your worst neighbors. I live right directly across, my property goes in your front door."

65.     Another opponent of Good Works application was the president of the fraternal order of the property next door.  He testified: "I'm president of the Slovak Catholic Association, which is a fraternal."  He further stated: "Let's first off get it straight, we're not a bar, we're a fraternal organization that happens to have a bar. We do have things, we have kid functions, we have things on Saturday and Sunday, organization right next to you."  He continued: "You're mentioning impact,

your impact of what you're going to do in help is great. What we experienced as business owners right across from the convalescent home was the workers. They would have domestic disputes in the parking lot, in our parking lot. And it is not I'm worried about your message."

66.     He also added:  Now we're talking about Saturday and Sundays, you're bringing people into Perryopolis that did not know Perryopolis existed. They only know how to go up and down 51. So, when that Meth clinic came in, my dad lived there for 50 years. I'm in the garage, working on stuff, there's a guy casing my dad's house because they know all the elderly. What you're bringing, it isn't what you're doing to help, it's what you're bringing in from Fairchance and Point Marion."  He also added: "If Allegheny County is contracting you guys, it's because they don't want it in their county."  In a closing comment, he stated: "But again, the place and time is not here. I help people, and I understand what you're trying to do for your help, but it is not there. There are limited resources."

67.     Counsel for Good Works, in his closing argument, stated: 'I understand that nobody wants it in their back yard. The problem is that it needs to be in somebody's back yard. This is not the first facility that's run up against neighborhood opposition. We understand that. There's lots of laws to protect this facility and they [ neighbors in opposition] don't care about that. All they [the Gipes] care about is helping people."

68.     In closing argument, Mr. Purcell, Solicitor for the Township, stated: "It is the wrong place because we have a zoning ordinance. It has been established. It is the law. And the law says you can only put certain things in certain places.  "The law, when it comes to these types of facilities, says they have to be, we need them. There is no question about it. They are needed, but there are only certain places that they can be."

69.     Mr. Purcell added: "If their [Good Works] interpretation of the ordinance is right, that this somehow fits, this 3 B facility fits into the Nursing/Convalescent category, the whole ordinance structure breaks down because the ordinance doesn't even allow a halfway house in an R-1, which is obviously a more intensive level -- less intensive level of care. You would basically have a less intensive level of care being prohibited in a district because remember what they're asking you to rule. It won't be just for this case, it will be for the whole county that has county zoning. Any R-1 or RA district in the county, this type of facility could go in."

70.     Mr. Purcell, argued reclassify the use of Good Works facility as that of a halfway house as opposed to a treatment facility for the purpose of excluding it from the allowance as a special exception as a nursing/convalescence facility makes for a breakdown in the zoning structure.

71.     He continued: "That's all of the most dense, the most homogenously [sic] residential areas will be wide open. All they need is a special exception. Now that just doesn't make sense given how the ordinance specifically puts the halfway house only in R-2, the group home only in R-2, the other facility, boarding home only in R-2, when the use is not your traditional residential use. It is excluded from those particular districts. Makes sense."

He added: "This is an attempt to turn that around. What they are trying to do is to say this is a nursing home. The commissioners when this was adopted made that one limited exception. We're going to let nursing homes in residential areas. Why did they do that. Nursing homes tend to be low impact. Low activity, they're quiet."

**D.     THE ZHB'S DENIAL OF THE GOOD WORKS APPLICATION**

72.     The Board denied the Plaintiffs' special use permit application finding that it was not a "Nursing Home/Convalescent Care Facility," thereby rejecting Good Works reasonable

accommodation request that its use be treated in the same manner as that of a "Nursing Home/Convalescent Care Facility."

73.     The ZHB went through the requirement of each possible zoning classification of housing for which Good Works might fit: Nursing/Convalescent Care; Group Home; and, Halfway House.

74.     The ZHB then emphatically stated, using capitalized type that Group Home is NOT a permitted use in a "R-1" Medium Density Residential zoned area, even by special exception.

75.     The ZHB used identical language to state the prohibition concerning halfway houses.

76.     In the present case, the Board finds that Petitioner's request falls plainly under the definition of a Halfway House or Group Home, rather than a Nursing/Convalescent Care Facility. This is so given the fact that both the Group Home and the Halfway House reference the rehabilitation and supervision for drug-dependent individuals, not yet prepared to reintegrate into society. The Zoning Hearing Board finds the ordinance unambiguous in its definitions of Halfway House and Group Home, to include the precise uses requested by the Petitioner. Accordingly, the Zoning Hearing Board must apply the ordinance as written.

77.     The ZHB then found:  Given the fact that neither a Group Home nor Halfway House is a permitted use, even by special exception, in an "R-1" Medium Density Residential zoned area, this request must fail as a matter of law.

78.     The ZHB concluded:  Even if, for argument purposes, the request of the Petitioner could fall under a Nursing/Convalescent Facility it still must fail as the Petitioner does not have the requisite one ( acre of property required under the standards set forth in Section 1000-811 of the Fayette County Zoning Ordinance.

79.     In denying the application, the Board failed to address the Plaintiffs' reasonable accommodation request.

80.     Neither of the Defendants have a policy or procedure for processing requests for reasonable accommodations in the application of the County's zoning code.

81.     The effect of Defendant's actions has been to prevent the Plaintiff from utilizing the dwelling of their choice or any other similarly situated dwelling in  Fayette County.

82.     Plaintiff is an  aggrieved person as it associated with disabled persons under the Fair Housing Amendments act of 1988, 42 U.S.C. Section 3602(d) and (I) who have been injured by Defendants' discriminatory conduct and have suffered damages, economic loss and a loss of civil rights as a result of the Defendant's conduct.

83.     14 Memorial Drive is a dwelling within the meaning of section 802(b) of the Fair Housing Act, 42 U.S.C. Section 3602(b).

84.     The effect of Defendants actions is to deny needed housing opportunities to persons seeking treatment from substance abuse  within Fayette County.

85.     The effect of the conduct of the Defendants is to limit the housing opportunities of unrelated disabled persons by denying them the right to live together as a group in any residential zoning district in within Fayette County.

86.     The Defendants are treating the prospective residents of the aforementioned dwelling in a discriminatory fashion and are utilizing its police and zoning powers on this group of unrelated disabled individuals seeking treatment in a residential setting than it imposes upon individuals living in other housing designated for the disabled.

87.     By arbitrarily and illegally classifying the use of 14 Memorial Drive as a "Group Home" or "Halfway House" the Defendants have therefore made treatment unavailable to persons to individuals who need it.

88.     The Defendants have acted under color of state law in failing to affirmatively further fair housing in its code enforcement activities with the purpose and effect of discriminating against Plaintiff prospective residents because of their handicap, and applying those codes so as to deny Plaintiffs the housing opportunities available to them.

89      The Plaintiff has been denied the opportunity to provide residential treatment services and as a result have suffered economic damages, and other irreparable harm as a result of Defendants' actions.  It has  no adequate remedy at law.

90.     The Defendants have utilized its police powers to threaten, intimidate, harass and coerce the Plaintiff after it exercised its rights under the Federal Fair Housing Act.

91.     The Defendants are intentionally and maliciously harassing, intimidating and interfering with the plaintiffs and persons associated with the plaintiffs with the intent of preventing Good Works from existing in moderate density residential zones in the County.

### V.   CLAIMS FOR RELIEF

### COUNT I
### FAIR HOUSING ACT
### (Both Defendants)

92.     Plaintiffs re-allege and incorporate herein by reference paragraphs 1 through 91 above.

93.     Defendants, the County Commissioners of Fayette County and the Zoning Hearing Board of Fayette County are violating Plaintiff's rights under the Fair Housing Act, 42 U.S.C. Sections 3601, et. seq, and its implementing regulations by:

a.     denying and otherwise making housing unavailable to the Plaintiff and its prospective residents because of their disability;

b.     using its police powers as a pretext to exclude the Plaintiff and its prospective residents because of their disability;

c.     interfering with the right of the Plaintiff and its residents to live in the dwelling of their choice;

d.     enforcing an ordinance that has the effect of denying housing to persons seeking treatment from alcoholism and substance abuse.

e.     discriminating in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of the status of the Good Works  residents as persons seeking substance abuse treatment;

f.     failing to make reasonable accommodations in its zoning, building and property maintenance codes so as to afford the Plaintiffs an equal opportunity to use and enjoy the aforementioned dwelling;

g.     retaliating against Plaintiffs because of their exercise their fair housing rights; and,

h.     making, printing or publishing, or causing to be made, printed or published a statement in connection with the sale or  rental of housing that indicates a limitation, preference or discrimination on the basis of disability

**COUNT II**

## AMERICANS WITH DISABILITIES ACT
### (Both Defendants)

\    94.    Plaintiffs re-allege and incorporate herein by reference paragraphs 1 through  above 93.

95.    The Plaintiff, Good Works is associated with, and/or providing housing to people with disabilities as defined in 42 U.S.C.  12102(2).

96.     The Defendants, the County Commissioners of Fayette County and the Zoning Hearing Board of Fayette County  are public entities under 42 U.S.C. 12131(1).

97.    The actions of the Defendants, to prevent the use 14 Memorial Drive as a substance abuse treatment facility violates the rights of the Plaintiff and its prospective patients under the Americans With Disabilities Act, 42 U.S.C. 12132 et. seq., and the regulations promulgated thereunder by:

a.    denying the individual prospective patients of the Plaintiff who are seeking treatment from alcoholism and substance abuse the opportunity to participate in or benefit from the resdiential substance abuse treatment program offered by Good Works;

b.    using municipal police powers and methods of administering those powers with the purpose of subjecting the Plaintiff and its prospective patients to discrimination on the basis of their disability;

c.    subjecting the Plaintiff and its proposed residents, on the basis of their disability, to discrimination;

d.    denying the prospective patients  of Good Works., an opportunity to participate in a program in the most integrated setting appropriate to their needs;

e.      denying the prospective patients of Good Works who are people with disabilities, an equal opportunity to participate in or benefit from services and programs equal to those of people without disabilities;

f.      utilizing municipal code enforcement services that are not equal to groups of related non-disabled persons and groups of unrelated disabled persons who are not persons seeking substance abuse treatment.

## COUNT III
## RLUIP A -Substantial Burden
### (Both Defendants)

98.     Plaintiff re-allege and incorporate herein by reference paragraphs 1 through  above 97.

99.      Defendant's treatment and denial of the Good Works special exception and variance application constitutes the imposition or implementation of a land use regulation that imposes a substantial burden on the Good Works religious exercise, which burden is not in furtherance of a compelling governmental interest and/or is not the least restrictive means of furthering such interest, in violation ofRLUIPA, 42 U.S.C. § 2000cc(a)(l).

## COUNT IV
## RLUIP A -Equal Terms
### (Both Defendants)

100.     Plaintiffs re-allege and incorporate herein by reference paragraphs 1 through  above 99.

101.     Defendants' treatment of the Good Works and its denial of the Good Works special exception and variance application constitutes the imposition or implementation of a land use

regulation that treated, and continues to treat, Good Works on less than equal terms with a nonreligious assembly or institution, in violation of RLUIPA, 42 U.S.C. § 2000cc(b)(l).

## COUNT V
### RLUIPA-Discrimination
### (Both Defendants)

102.    Plaintiffs re-allege and incorporate herein by reference paragraphs 1 through  101 above.

103.    Defendant has treated the Good Works and its special exception and variance application differently from other applications on the basis of religion or religious denomination, in violation of RLUIPA, 42 U.S.C. § 2000cc(b)(2).

## COUNT VI
### RLUIPA -Unreasonable Limitations
### (Both Defendants)

104.    Plaintiffs re-allege and incorporate herein by reference paragraphs 1 through  103 above.

105.    Defendants have placed unreasonable limitations on religious assemblies, institutions, and structures, including unreasonable limitations on Good Works, through its land use regulations, in violation of RLUIPA 42 U.S.C. § 2000cc(b)(3).

## PRAYER FOR RELIEF AS TO EACH COUNT

**WHEREFORE**, Plaintiffs requests that the Court:

a.    Enter a declaratory judgment that Defendants have illegally discriminated against the Plaintiff in violation of the FHA,  ADA, and RLUIPA;

b.    Provide injunctive relief restraining the Defendants from discriminating against the Plaintiff and its prospective patients with the use of the 14 Memorial Drive property as a non-

hospital, short term substance abuse treatment facility seeking treatment for alcoholism and/or substance, and/or from interfering in Good Works rights to reside to use the property;

      c.      Enter a declaratory judgment stating that Good Works's use of the 14 Memorial Drive is consistent with classification of the premises as Nursing/Convalescent Care Facility and require the Defendant to apply all zoning, safety, building, and land use codes to Good Works use of 14 Memorial Drive  in the same manner as it does to all other similarly situated facilities.;

      d.      Award the plaintiffs any available damages under the FHA, ADA and RLUIPA;

      e.      Grant an award of reasonable costs and attorneys fees; and,

      f.      Order other such other relief as the Court deems just and proper.

Respectfully submitted,

/S/ Nancy Marcus Newman

_____

NANCY MARCUS NEWMAN
3406 Goshen Road
Newtown Square, PA 19073
nancymarcusnew@gmail.com
Telephone: 610-213-6303
Facsimile: 925-522-3196

/S/ Steven G. Polin

_____

STEVEN G. POLIN
3034 Tennyson Street, NW
Washington, D.C. 20015
spolin2@earthlink.net
Telephone: 202.331.5848
Facsimile: 202.331-5849
(pro hac vice application pending)

COUNSEL FOR PLAINTIFFS